1  JEFFER MANGELS BUTLER & MITCHELL LLP
   PAUL L. WARNER (Bar No. 54757), pwarner@jmbm.com
2  GABRIEL Z. REYNOSO (Bar No. 234027), greynoso@jmbm.com
   Two Embarcadero Center, Fifth Floor
3  San Francisco, California  94111-3813
   Telephone:    (415) 398-8080
4  Facsimile:    (415) 398-5584

5  Attorneys for Defendant CRAIN WALNUT SHELLING, INC., a
   California corporation

6

7

8                        UNITED STATES DISTRICT COURT

9                        EASTERN DISTRICT OF CALIFORNIA

10

11 | SHANY CO., LTD., a Korean corporation,     | CASE NO.    2:11-cv-01112-KJM-EFB

12 |         Plaintiff,                          | **DEFENDANT CRAIN WALNUT SHELLING, INC.'S PETITION TO**
13 |     v.                                      | **CONFIRM ARBITRATION AWARD, ENTRY OF JUDGMENT, AND AWARD OF**
14 | CRAIN WALNUT SHELLING, INC., a              | **ATTORNEYS' FEES; MEMORANDUM OF**
   | California corporation; and DOES 1-10,      | **POINTS AND AUTHORITIES**
15 | inclusive,
   |                                             | Date:       May 23, 2014
16 |         Defendants.                         | Time:       10:00 a.m.
   |                                             | Dept.:      Courtroom 3, 15th Floor
17 |                                             | Judge:      The Hon. Kimberly J. Mueller

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I. introduction ..................................................................................................................1

    A. Arbitration Is Favored Remedy ........................................................................1

    B. Crain Initiates Arbitration .................................................................................1

    C. The Federal Court Action .................................................................................2

    D. The ICC Arbitration Hearing ............................................................................2

II. FACTS PERTAINING TO UNDERLYING CONTRACT DISPUTE .........................3

III. procedural history .......................................................................................................3

    A. Shaney's Legal Representation .........................................................................3

    B. Crain Requests ICC Arbitration – First Objection To Arbitration ...................5

    C. Federal Court Action ........................................................................................6

    D. The Arbitrator Rules On Jurisdiction ...............................................................8

    E. Shany Challenges The Arbitrator For Bias ......................................................9

    F. The ICC Arbitration Hearing ..........................................................................10

IV. jurisdiction .................................................................................................................11

V. Shany's objections to arbitration have been adjudicated ...........................................12

VI. ORDER AND JUDGMENT SOUGHT BY CRAIN ..................................................13

Defendant Crain Walnut Shelling, Inc. ("Defendant" or "Crain") hereby petitions this Court for an Order Confirming Arbitration Award, Entry Of Judgment And Award Of Attorneys' Fees ("Petition Re Award").

## I. INTRODUCTION

### A. Arbitration Is Favored Remedy

Arbitration is a favored forum to resolve disputes under both California law and precedent and the Federal Arbitration Act ("FAA") to provide a speedy and inexpensive method of resolving contractual disputes.  While concerns are expressed from time to time about arbitration clauses in consumer and employee disputes, no one would contend that arbitration is inappropriate in the context of a commercial dispute between two large and sophisticated companies such as Crain and Shany.  Moreover, arbitration is particularly appropriate in international disputes because it enables the parties to select an arbitrator from a neutral country.  Indeed, this Court noted that some commentators have suggested that arbitration provisions are now standard in international contracts. *See* June 1 Order (defined below) at 12:1-3.

Unfortunately, Shany and its counsel have done everything possible to prevent this arbitration from going forward and at the same time eliminated the possibility of a speedy or inexpensive proceeding.  The end result is that an arbitration which should have taken six months to conclude at a relatively modest cost has instead taken more than three years from the filing of the Request for Arbitration to entry of a Final Award at a cost in excess of $500,000 when taking into account those attorneys' fees incurred in connection with this Action.  The extraordinary delay and cost are solely attributable to Shany's litigation tactics.  As a result, Shany has more than doubled its potential exposure in this contract dispute.

### B. Crain Initiates Arbitration

Over three years ago, in February 2011, Crain filed a Request for Arbitration with the International Chamber of Commerce (the "ICC") against Plaintiff Shany Co., Ltd. ("Plaintiff" or "Shany"), ICC Case No. 17730/CYK (the "ICC Arbitration").  The underlying contract dispute was quite simple.  Shany signed an agreement to purchase a certain volume of walnuts from Crain but thereafter the price of walnuts dropped.  Shany reneged on the contract and Crain was forced to sell

the contracted for walnuts at a lower price.  Crain sought the difference between the contract price and the sale or cover price.

Shany immediately objected and challenged the validity of the contract, asserted that its purchasing agent did not have authority to sign the contract, and disputed whether it had agreed to arbitrate disputes at all.  Moreover, Shany challenged whether the ICC could decide the issue of arbitrability of the underlying contract dispute.  This issue of arbitrability was submitted to the ICC International Court of Arbitration (the "ICC Court") and on April 21, 2011, the ICC Court ruled in favor of Crain on the issue of arbitrability thereby allowing the ICC Arbitration to proceed.

### C. The Federal Court Action

A mere four days later, on April 25, 2011, Shany filed this Action against Crain.  Shany's original Complaint [Docket No. 1] and First Amended Complaint ("FAC") [Docket No. 17] asserted two causes of action for declaratory and injunctive relief.  In the First Cause of Action, Shany sought a declaration that the "Terms and Conditions" incorporated by reference into the Contract, as defined in Shany's Opposition to Shany's Motion For Preliminary Injunction [Docket No. 11], are not enforceable against or applicable to Shany.  The Second Cause of Action, in turn, sought to enjoin the ICC Arbitration.

Meanwhile, the ICC Arbitration proceeded, but on July 13, 2011, Shany filed a Motion For Preliminary Injunction [Docket No. 8] seeking an order restraining Crain from proceeding with the ICC Arbitration (the "Motion Re Injunction").  In Shany's own words, the narrow issue raised by the Motion was whether Shany "agree[d] that an arbitrator could determine the threshold issue of arbitrability?  In effect, did Shany waive its right to judicial review?" *Id.* at 1.  Crain opposed the Motion [Docket No. 11] ("Opposition Re Injunction").

On June 1, 2012, this Court issued an Order denying Shany's Motion [Docket No. 51] (the "June 1 Order"), thereby allowing the ICC Arbitration to proceed.

### D. The ICC Arbitration Hearing

The Arbitration hearing was held on September 12-13, 2013 in San Francisco, California.  *See* Declaration of Gabriel Z. Reynoso In Support Of Petition To Confirm Arbitration Award, etc. ("Reynoso Decl."), Exh. 1, ¶ 49.

PRINTED ON RECYCLED PAPER
SF 1834774v3

On March 18, 2014, the ICC International Court of Arbitration issued a Final Award in favor of Crain (the "Final Award").  *See* Reynoso Decl., Exh. 1.

By means of this Petition, Crain seeks an order confirming the Final Award and entry of Judgment thereon, which includes the damages awarded for breach of contract (including interest and attorneys' fees incurred in the Arbitration), accrued interest on the Final Award through entry of Judgment, and additional attorneys' fees incurred in connection with this Action,[1] including those attorneys' fees incurred in preparing this Petition and the Attorneys' Fees Motion.

## II.     FACTS PERTAINING TO UNDERLYING CONTRACT DISPUTE

The facts pertaining to the underlying dispute between Crain and Shany are outlined in detail in the Opposition Re Injunction [Docket No. 11] and in the Final Award, which is the basis and subject matter of this Petition Re Award.  *See* Reynoso Decl., Exh. 1.  We refer the Court to the Final Award, whose fact findings are incorporated herein by reference.  *See* Reynoso Decl., Exh. 1, ¶¶ 59-135.

## III.    PROCEDURAL HISTORY

The following is not intended to be comprehensive in nature, but merely serves to highlight those dates and events which are relevant to this Petition Re Award.  For a more comprehensive recitation of the procedural history in the ICC Arbitration, the Court should refer to the Final Award.  *See id*., ¶¶ 18-58.

### A.     Shaney's Legal Representation

After Shany received notice from the ICC as to Crain's Request For Arbitration, Shany appeared in the ICC Arbitration through California counsel, Lisa Yang of Lim Ruger & Kim LLP.  *See id*., ¶ 10.  Ms. Yang also filed the instant Federal lawsuit.

A few months after Shany's Motion Re Injunction was denied, on October 19, 2012, Ms. Yang advised the Arbitrator and Crain's counsel that new attorneys would be substituting in as counsel for Shany in connection with the ICC Arbitration.  *See* Reynoso Decl., Exh. 2.  Ms. Yang

---

[1] The attorneys' fees incurred in this Action are the subject matter of Crain's Motion For An Award of Attorneys' Fees (the "Attorneys' Fees Motion"), which is filed concurrently herewith.

identified Shany's new counsel as Mr. Sudeok Jang of International Lawyers PC.  *See id.*

However, since October 29, 2012, when Ms. Yang withdrew as counsel for Shany in connection with the ICC Arbitration, neither she nor her law firm has filed a substitution of attorney nor sought leave from the Court to withdraw as counsel for Shany in this Action.  Consequently, as of the date of this Petition, Ms. Yang is still counsel of record for Shany in this Action.  As such, Ms. Yang has been served with the Notice of this Petition in accordance with Local Rule 182(d) and (g) which provide as follows:

> (d) **Withdrawal.**  Unless otherwise provided herein, an attorney who has appeared may not withdraw leaving the client in propria persona without leave of court upon noticed motion and notice to the client and all other parties who have appeared. … The authority and duty of the attorney of record shall continue until relieved by order of the Court issued hereunder.  Leave to withdraw may be granted subject to such appropriate conditions as the Court deems fit.
>
> (g) **Substitution of Attorneys.**  An attorney who has appeared in an action may substitute another attorney and thereby withdraw from the action by submitting a substitution of attorneys that shall set forth the full name and address of the new individual attorney and shall be signed by the withdrawing attorney, the new attorney, and the client.  All substitutions of attorneys shall require the approval of the Court, and the words **"IT IS SO ORDERED"** with spaces designated for the date and signature of the Judge affixed at the end of each substitution of attorneys.

Mr. Jang's connection with these proceedings is more obtuse.  As noted above, as of October 19, 2012, Mr. Jang was counsel of record in the ICC Arbitration.  However, after the Arbitrator ruled against Shany on the issue of arbitrability following the June 1 Order (as discussed below), and after the ICC refused to disqualify the Arbitrator, Mr. Jang withdrew, and for a short time, pleadings were served on Shany - the company - only.  But then Mr. Jang began to write a series of letters to the ICC and the Arbitrator, all the while representing that Shany would not participate in the Arbitration but still wanting to be heard.  *See*, *e.g*., Reynoso Decl., ¶¶ 48, 53.  In the end, Mr. Jang did not participate in the arbitration, but otherwise did write a number of letters to the Arbitrator complaining about the unfairness of the proceedings.  *Id*., ¶ 55.

Because of the uncertainty as to Mr. Jang's status as counsel for Shany, the Petition and all pleadings and/or documents in support thereof were provided to him as a courtesy so as to ensure that Shany received timely notice of the Petition.  The Proof of Service will confirm that the

Petition and Attorneys' Fees Motion (and all related pleadings) were timely served via email on Mr. Jang.

### B. Crain Requests ICC Arbitration – First Objection To Arbitration

As noted above, on February 7, 2011, Crain filed a Request for Arbitration (the "Request") with the ICC. *See id.*, Exh. 1, ¶18.

In its Request, Crain alleged that Shany unilaterally and without cause terminated and/or repudiated the contract between Crain and Shany (the "Contract") for the purchase of walnuts from Crain solely because walnut prices had decreased from the time that the Contract was executed, and Shany was able to purchase identical walnuts from another seller at a lower price. Copies of the documents comprising and/or memorializing the Contract are attached as Exhibits A through F to the Declaration Of Victoria Lapera In Opposition To Shany's Motion For Preliminary Injunction (the "Lapera Decl.") [Docket Nos. 11-6 and 11-7], including the Confirmation of Sale and Purchase Agreement dated March 29, 2010 (the "Standard Confirmation") containing, *inter alia*, the arbitration clause which was the basis of the Request. *See* Lapera Decl., Exh. F. [Docket No. 11-7].

On March 30, 2011, Shany served an Opposition to Crain's Request (the "Opposition") arguing, *inter alia*, that the ICC may not decide the arbitrability of Crain's claims against it. *See* Reynoso Decl., Exh. 1, ¶18.

On April 8, 2011, Crain filed its Response to Shany's Opposition (the "Response to Opposition to Request"), wherein Crain asserted that the Arbitration Agreement (as defined in the Final Award) was valid and enforceable and should be resolved by the ICC pursuant to Article 6(2) of the ICC's Rules of Arbitration. *Id.*

The next day, on April 9, 2011, Shany filed a Response To Claimant's Brief Re Arbitration (a further "Reply Brief") and requested that the ICC deny Crain's Request for Arbitration on the basis that no valid and enforceable arbitration agreement existed between the parties; or in the alternative, defer such a ruling to a court of competent jurisdiction in which Crain may bring its claims. *Id.*, ¶19.

On April 15, 2011, Crain filed its Sureply to Shany's Response to Claimant's Brief

1   Re Arbitration (the "Surreply").  *Id.*

2   Thereafter, on April 21, 2011, the ICC Court issued a letter ruling that the ICC Court
3   had decided that the arbitration would proceed in accordance with Article 6(2) of the ICC Rules.  In
4   that same letter, the ICC Court reminded Shany that its Answer to Crain's Request was due by April
5   25, 2011.  *Id.*

6   On April 25, 2011, Shany filed its Objections and Answer to Crain's Request (the
7   "Answer").  *Id.*, ¶20.

8   **C.    Federal Court Action**

9   Also, on April 25, 2011, Shany initiated this Action by filing a Complaint For
10  Declaratory And Injunctive Relief (the "Complaint") [Docket No. 1].  In the Complaint's prayer for
11  relief, Shany sought, *inter alia*, (1) "a declaration that the terms and conditions contained in Crain's
12  'Terms and Conditions' are not enforceable against or applicable to Shany" and (2) "an order or
13  other injunctive relief directing defendants to cease taking further action in the ICC and the
14  arbitration proceeding Crain instituted within the ICC and its International Court of Arbitration
15  against Shany in Case No. 17730/CYK."

16  On May 25, 2011, Crain filed its Answer To Complaint And Affirmative Defenses
17  ("Answer Re Complaint") [Docket No. 6].

18  On May 26, 2011, the ICC Court notified the parties that Mr. George Vlavianos (the
19  "Arbitrator"), a partner with the law firm of Bennett Jones LLP in Calgary, Canada, had been
20  appointed by the ICC Court as the sole arbitrator upon the Canadian National Committee's proposal
21  pursuant to Article 9(3) of the ICC's Rules of Arbitration.  *See* Reynoso Decl., Exh. 1, ¶ 21; *see also*
22  *id.*, Exh. 3.  Thereafter, Crain and Shany agreed to stay the ICC Arbitration pending a ruling on
23  Shany's Motion Re Injunction in this Action.  *See* Reynoso Decl., Exh. 1, ¶24.

24  Subsequently, on July 13, 2011, Shany filed its Motion Re Injunction in this Action.
25  Pursuant to its Motion Re Injunction, Shany sought an order from this Court prohibiting Crain from
26  proceeding with the ICC Arbitration.

27  On July 27, 2011, Crain filed an (1) Opposition To Plaintiff Shany Co., Ltd.'s
28  Motion For Preliminary Injunction [Docket No. 11] and (2) a Notice of Motion And Counter-

Motion To Compel Arbitration [Docket No. 10] ("Counter Motion to Compel").

Shany's Motion and Crain's Counter-Motion to Compel were both heard and argued on August 31, 2011.

Thereafter, this Court issued its June 1 Order denying Shany's Motion Re Injunction. In the June 1 Order, this Court explained, in pertinent part, as follows:

> **The mutual assent necessary for the formation of a contract need not be demonstrated by a signature, but may be manifested by an act or omission demonstrating consent.** Exhibit C-69 at 14:2-4. (Emphasis added.)
>
> . . .
>
> **[¶] Crain argues Shany's acceptance was manifested by [Mr.] Kim's e-mail and the stamp on the 'annual volume document,' which [Mr.] Kim explained meant that Crain 'had the business.' It also suggests that Shany's failure to repudiate the [March 26] [C]ontract when it sent confirming standard terms and conditions, and that the provision that failure to sign or repudiate the contract constituted acceptance.**
>
> **Under these circumstances, when [Mr.] Kim arguably accepted the incorporated terms by his email of March 26, Shany's failure to sign the April 6 terms and conditions does not necessarily translate into Shany's refusal to consent to the terms, particularly when [Mr.] Choi acknowledges that [Mr.] Kim 'reported to him' about Crain's terms and conditions. [Citation.] This also undercuts Shany's argument that [Mr.] Kim lacked the authority to bind the company: [Mr.] Choi acknowledges that he was aware of the Terms and Conditions and yet did not object during the seven day window or at any time during the following months.** Again, given the state of the record, Shany has not borne its burden of showing that its failure to sign the agreement translates into a likelihood of success on the merits. June 1 Order at 14:11-26.

On that basis, this Court concluded that:

> … In this case, the ICC rules, incorporated into Crain's terms and conditions, give the arbitrator the authority to determine arbitrability.
>
> [¶] Given this record and the state of the law, the court finds Shany has not established a likelihood of success on the merits and so has not justified the issuance of a preliminary injunction. *Id.* at 15:7-12.

Upon receipt of the June 1 Order, Crain's counsel advised the Arbitrator that this Court had denied Shany's Motion Re Injunction and, on that basis, requested that the ICC

PRINTED ON RECYCLED PAPER
SF 1834774v3
JMBM | Jeffer Mangels Butler & Mitchell LLP

1  Arbitration proceed.  *See* Reynoso Decl., Exh. 1, ¶26.

2      **D.**    **The Arbitrator Rules On Jurisdiction**

3      Following a status conference call with the Arbitrator held on June 7, 2012, Shany's
4  counsel advised the Arbitrator and Crain's counsel, by means of a letter date June 22, 2012, that
5  Shany would proceed with the Arbitration.  *Id.*, ¶27.  However, Shany requested that the Arbitrator
6  reconsider the arbitrability issue.  *Id.*

7      Thereafter, on August 31, 2012, Crain and Shany agreed to and executed the Terms
8  of Reference which would apply to the ICC Arbitration.  *Id.*, ¶28; *see also* Reynoso Decl., Exh. 4.
9  Pursuant to the Terms of Reference, and as provided for in the Arbitration Agreement, the location
10 of the arbitration proceeding was changed from Los Molinos, California to San Francisco,
11 California.  *See* Reynoso Decl., Exh. 5.  The parties *agreed* that there would be a sole arbitrator.  *Id.*
12 Finally, at Shany's request, the Terms of Reference reflected the fact that Shany continued to
13 challenge the validity and enforceability of the Arbitration Agreement.  *Id.*

14     Subsequently, by correspondence dated September 18, 2012, the Arbitrator advised
15 counsel for Crain and Shany that he would proceed with determination of the jurisdictional (i.e.,
16 arbitrability) issue.  *See id.*, ¶32.

17     Thereafter, on October 19, 2012, Shany's original counsel, Lisa Yang, advised the
18 Arbitrator and Crain that new attorneys would be substituting in as counsel for Shany in connection
19 with the ICC Arbitration.  *See* Reynoso Decl., Exh 2.  Ms. Yang identified Mr. Sudeok Jang of
20 International Lawyers PC as its counsel.  *Id.*  Nevertheless, as reflected on the Court docket, Ms.
21 Yang never formally withdrew as counsel for Shany in this Action.

22     On December 18, 2012, with respect to Shany's renewed challenge to arbitrability,
23 the Arbitrator declared the ICC Arbitration closed.  *See* Reynoso Decl., Exh. 1, ¶34.

24     Subsequently, on April 19, 2013, the Arbitrator issued a Partial Award in which he:
25 (1) held that the Arbitration Agreement was both valid and enforceable; (2) found that he had
26 jurisdiction to adjudicate the present dispute between Crain and Shany; and (3) directed the ICC
27 Arbitration to proceed (the "Partial Award").  *See* Reynoso Decl, Exh. 1, ¶ 36; *see also* Reynoso
28 Decl., Exh. 5. In reaching that conclusion, the Arbitrator found, in relevant part, as follows:

> As arbitration is a matter of contract, the Arbitration Agreement will only be valid and enforceable if it can be said that the parties in fact agreed to it. While the agreement to arbitrate should be in writing, it need not be signed to be binding under California law. It is the existence of mutual assent that is key. Failure or refusal to sign the Arbitration Agreement of the disputed Contract containing it is therefore not determinative of whether the parties agreed to arbitrate …. Reynoso Decl., Exh. 1, ¶ 42.

> [¶ ] I am satisfied that there is sufficient evidence before me to ground a finding of mutual consent with respect to the Arbitration Agreement under California law. … I therefore find that the Respondents [(which included Shany)], through their acts and omissions, signaled their acceptance of the Arbitration Agreement to [Crain] and, by doing so, agreed to arbitrate disputes related to the disputed Contract in accordance with that Arbitration Agreement. In short, I do not accept the … contention that there is no agreement to arbitrate between the parties. *Id.*, ¶ 43.

> [¶ ] Nor do I accept the contention … that the Arbitration Agreement is somehow undermined because the actual Terms and Conditions were not provided to them prior to March 26, 2010…. *Id.*, ¶ 44.

### E.   Shany Challenges The Arbitrator For Bias

Subsequently, on May 31, 2013, Shany submitted to the ICC a formal challenge to the Arbitrator, pursuant to Articles 11 (Challenge of Arbitrators) and 12 (Replacement of Arbitrators) of the ICC's Rules of Arbitration (the "Challenge"). *See* Reynoso Decl., Exh. 1, ¶40. Essentially, Shany claimed that because the Arbitrator had ruled against Shany's position on arbitrability and found that the dispute was subject to binding arbitration (a position which this Court agreed with) *ergo,* the Arbitrator *must* have been biased against Shany. While this may sound fantastical, it was the substance of Shany's challenge and is further evidence why this Arbitration has taken so long to resolve and why it has become so expensive.

In response to the Challenge, the Arbitrator informed the parties the ICC Arbitration would held in abeyance pending resolution of the Challenge. *Id.*, ¶41.

Thereafter, by means of a letter dated June 28, 2013, the Secretariat of the ICC Court informed the parties that at its session of June 27, 2013, the ICC Court had decided to reject the Challenge, pursuant to Article 11(3) of the ICC's Rules of Arbitration. *Id.*, ¶43; *see also* Reynoso Decl., Exh. 6.

### F.     The ICC Arbitration Hearing

On July 16 and 19, 2013, the Arbitrator conducted case management conference calls.  *See* Reynoso Decl., Exh. 1, ¶46.  Shany's counsel was informed of the conference calls but chose not to participate.  *Id.*  Subsequently, by email dated July 21, 2013, the Arbitrator circulated a Revised Procedural Timetable indicating that the Arbitration hearing was to be held on September 12-13, 2013 by videoconference in San Francisco, California.  *Id.*; *see also* Reynoso Decl., Exh. 7.

On September 11, 2013, Shany's counsel - Mr. Jang - indicated by email that he had advised Shany that it "should not participate in the unfair and prejudicial procedure as a party."  Mr. Jang further indicated that:  "… we as counsel for Shany hereby withdraw ourselves from representation…."  Reynoso Decl., Exh. 1, ¶48.

The ICC Arbitration proceeded by videoconference on September 12-13, 2013 in San Francisco, California.  *Id.*, ¶49.  Crain participated in the proceedings, but Shany chose not to do so.  *Id.*  At the conclusion of the hearing, the Arbitrator requested that Crain submit post-hearing submissions addressing certain factual and legal matters.  *Id.*, ¶50.  Subsequently, by email dated October 14, 2013, Mr. Jang advised that notwithstanding his prior withdrawal as counsel for Shany, he continued to serve "as international legal counsel to Shany on all international legal issues it faces."  *See* Reynoso Decl., Exh. 1, ¶53.  On that basis, Mr. Jang requested that the parties and the ICC Court continue to copy him on future correspondence.  *Id.*  By email dated October 31, 2013, the Secretariat of the ICC Court confirmed that both Respondents, including Shany, were once again represented by Mr. Jang in connection with the ICC Arbitration.  *Id.*

By email dated January 20, 2014, the Arbitrator invited Crain to respond to certain submissions made by Shany.  *See* Reynoso Decl., Exh. 1, ¶56.  With that exception, the Arbitrator declared that the ICC Arbitration was otherwise closed pursuant to Article 22(1) of the ICC's Rules of Arbitration.[2]  *Id.*

---

[2] Article 22(1) of the ICC's Rules of Arbitration provides as follows:  "When it is satisfied that the parties have had a reasonable opportunity to present their case, the Arbitral Tribunal shall declare the proceedings closed.  Thereafter, no further submission or argument shall be made, or evidence produced, unless requested or authorized by the Arbitral Tribunal.

On March 18, 2013, the ICC Court issued its Final Award. *See* Reynoso Decl., Exh. 1. In the Final Award, the Arbitrator ruled and ordered, in relevant part, as follows:

 (b) Respondent Shany is liable to [Crain] for breach of the Disputed Contract.

 (c) Respondent Shany shall pay to [Crain] damages in the amount of $726,023.50.

 (d) Respondent Shany shall pay to [Crain] pre-award interest in the amount of $258,384.09.

 (e) Respondent Shany shall pay to [Crain] the sum of $332,507.19 for its costs and legal fees incurred in connection with this arbitration.

 (f) Respondent Shany shall bear the full costs of the arbitration fixed at $75,000. Since [Crain] has paid this entire sum in the form of an advance on costs, Respondent Shany shall reimburse [Crain] in the amount of $75,000.

 (g) All other requests and claims are rejected. *See* Reynoso Decl., Exh. 1, p. 73.

It should be noted that in addition to legal fees and costs incurred in connection with the ICC Arbitration, Crain had previously argued that based on the language of the Arbitration Agreement any award in its favor should also include all legal fees and costs incurred in connection with this Action. At the time of the Arbitration hearing, those fees and costs totaled $108,254.50 ("Federal Action Legal Costs").

Copies of the Final Award were transmitted by the ICC Court to counsel for Crain and Shany – Mr. Jang – by means of Federal Express overnight delivery on March 21, 2014 and March 24, 2014, respectively. *See* Reynoso Decl., Exh. 8. Crain also transmitted the Final Award to Mr. Jang via email on March 26, 2014. *See id.*, Exh. 9.

## IV. JURISDICTION

As noted in the FAC, this Court has jurisdiction over this Action pursuant to 28 U.S.C. §1332 because there is a diversity of citizenship and the amount in controversy exceeds $75,000.

Furthermore, for purposes of this Petition, Crain hereby invokes the Federal Arbitration Act, specifically 9 U.S.C. §9.

## V. SHANY'S OBJECTIONS TO ARBITRATION HAVE BEEN ADJUDICATED

In this Federal lawsuit and in the underlying Arbitration, Shany does not contend that it performed the contract. Instead, Shany claimed that it never entered in to a contract, or that the person who signaled assent on behalf of Shany had no authority to do so, and in addition that Shany never agreed to arbitrate disputes.

The issue of arbitrability was ruled on first by the ICC which held that there was sufficient evidence of an agreement to arbitrate to appoint an arbitrator to decide the issue. Not satisfied, and which was its right, Shany filed this lawsuit and sought a preliminary injunction to prevent the arbitration from going forward. The injunction was denied and in effect this Court ordered Shany to arbitrate. Then Shany asked the appointed Arbitrator to revisit the issue of his jurisdiction which he did and the Arbitrator agreed with this Court that Shany had agreed to arbitrate all disputes.

Notwithstanding the foregoing, Crain anticipates that Shany will ask this Court to revisit (for a fourth time) the issue of arbitrability and to reverse the Court's decision denying the injunction by finding that there was no agreement to arbitrate. There is simply no basis for doing so, especially after the Arbitrator agreed with this Court.

Shany may also object on procedural grounds to how the Arbitration was conducted. By way of background, in connection with its Challenge, Shany objected to, *inter alia*, the venue of the arbitration hearing (San Francisco, CA) and the fact that the arbitral tribunal was comprised of a single arbitrator. However, these two issues were specifically agreed to by Ms. Yang, as counsel of record for Shany, when she signed the Terms of Reference. So, while Shany is certainly entitled to change counsel, it cannot simply disavow the agreements made by its prior attorneys (who also happen to remain its attorneys of record in this Action).

Lastly, Shany may consider objecting to the Final Award on the grounds that that Arbitrator should have been disqualified due to some perceived bias. However, Shany's attempt effort to disqualify the Arbitrator was insulting as it was nothing more than a delay tactic both timed and designed to postpone the scheduled arbitration hearing. Indeed, the sole basis was that the Arbitrator had ruled against Shany on the jurisdictional issue (just as the ICC Court and this Court

had before).  Shany did not come close to satisfying the standard for disqualification.

In sum, there is no basis for vacating the Final Award.

## VI. ORDER AND JUDGMENT SOUGHT BY CRAIN

As explained above, the Arbitrator has rendered a Final Award in the ICC Arbitration.  The Final Award was duly acknowledged by the Arbitrator as well as the ICC Court and was delivered to counsel for Crain and Shany.

Based on the foregoing, Crain now moves as follows:

1. That an order of this Court be made confirming the Final Award;

2. That a judgment be entered in conformity therewith;

3. That Crain be awarded pre-judgment interest on the Final Award accruing after March 18, 2014 (the date of the Final Award) up to and including the date of entry of judgment at a rate of $198.91 per day;

4. That Crain be allowed attorneys' fees and other costs incurred in connection with this Action as provided in Crain's Attorney' Fees Motion; and

5. That Crain be awarded such other and further relief as the Court may deem proper.

DATED:  April 15, 2014            JEFFER MANGELS BUTLER & MITCHELL LLP
                                  PAUL L. WARNER
                                  GABRIEL Z. REYNOSO


                                  By: */s/ Gabriel Z. Reynoso*
                                              Gabriel Z. Reynoso
                                  Attorneys for CRAIN WALNUT SHELLING, INC.

13   CRAIN'S PETITION TO CONFIRM ARBITRATION AWARD

# PROOF OF SERVICE

## STATE OF CALIFORNIA, CITY AND COUNTY OF SAN FRANCISCO

*Shany Co. Ltd., etc. v. Crain Walnut Shelling, Inc., et al. Case No. 11-cv-01112 KJM-EFB*

I am employed in the City and County of San Francisco, State of California. I am over the age of 18 and not a party to the within action; my business address is: Two Embarcadero Center, 5th Floor, San Francisco, California 94111. On April 15, 2014 I served the document(s) described as **DEFENDANT CRAIN WALNUT SHELLING, INC.'S PETITION TO CONFIRM ARBITRATION AWARD, ENTRY OF JUDGMENT, AND AWARD OF ATTORNEYS' FEES; MEMORANDUM OF POINTS AND AUTHORITIES** in this action addressed as follows:

☒ (TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)) Pursuant to the controlling Rules, the aforementioned document(s) will be served by the court via NEF and proper link(s) to the document(s).

Lisa J. Yang, Esq.
Lim Ruger & Kim LLP
1055 West Seventh Street, Suite 2800
Los Angeles, CA 90017
Lisa.yang@limruger.com

☒ (BY ELECTRONIC SERVICE) On April 15, 2014, I transmitted the aforementioned document(s) as PDF attachments to the electronic notification address(es) shown below. The transmission originated from my electronic notification address, which is ln3@jmbm.com, and was reported as complete and without error.

Sudeok Jang, Esq.
INTERNATIONAL LAWYERS P.C.
350 S. Grand Ave., Suite 1520
Los Angeles, CA 90071
sdjang@sudeokjang.com

George Vlavianos, Esq.
BENNETT JONES LLP
4500, 855 – 2nd St. SW
Calgary, AB
T2P4K7
CANADA
vlavianosg@bennettjones.com

Rocio Digon, Esq.
International Court of Arbitration
International Chamber of Commerce
SICANA, Inc.
1212 Avenue of the Americas
New York, NY 10036
646-699-5709
Ica9@iccwbo.org
rocio.digon@iccwbo.org

Executed on April 15, 2014 at San Francisco, California. I declare under penalty of perjury under the laws of the United States that the above is true and correct.

/s/ Lara Nather

Lara Nather